## Excused Illnesses of Teachers

PHILLIPS, Deputy Attorney General, January 15, 1948.—You have requested an interpretation of the phrase "physician or other practitioner" as used in the Act of June 28, 1947, P. L. 1036, 24 PS §1162.

This act amends section 1206 of the School Code of May 18, 1911, P. L. 309, and requires school districts to pay full salary to professional employes who are prevented by illness from following their occupation under certain conditions including the following:

". . . Provided further that the board of school directors shall require the professional employe to furnish a certificate from a *physician or other practitioner* certifying that said professional employe was unable

to perform his or her duties during the period of absence for which compensation is required to be paid under this section." (Italics supplied.)

The word "physician" is defined by the Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 101, 46 PS §601, as meaning "an individual licensed under the laws of this Commonwealth to engage in the practice of medicine and surgery in any or all of its branches".

But the word "practitioner" and the phrase "or other practitioner" are not defined either in the statute in question or in the Statutory Construction Act or in any Pennsylvania court decisions.

It is a rule of statutory construction that general words shall be construed to take their meanings and be restricted by preceding particular words.[1] If this rule is applied, in view of the definition of the word "physician", "other practitioner" would include those who are licensed by the Commonwealth to practice any or all of the various branches of medicine or surgery.

The Medical Practice Act of June 3, 1911, P. L. 639, sec. 1, as amended, 63 PS §401, for the purposes of that act, defines the term "medicine and surgery" as meaning:

". . . the art and science having for their object the cure of diseases of and the preservation of the health of man including all practice of the healing art with or without drugs, except healing by spiritual means or prayer."

And also the term "healing art" as meaning:

". . . the science of diagnosis and treatment in any manner whatsoever of disease or any ailment of the human body."

Under this act the State Board of Medical Education and Licensure licenses physicians and surgeons as well

---

[1] Statutory Construction Act, sec. 33, 46 PS §533.

as practitioners of drugless therapy, chiropody and physiotherapy.[2]

"Drugless therapy" embraces any treatment which has the spine for a basis and includes chiropractic, naprapathy, neuropathy, naturopathy, spondylotherapy and other systems of practice of similar nature.[3] The licenses issued for these special branches of medicine limit the holders to practice of the specific form of therapy designated therein.

Drugless therapists are required by regulations of the State Board of Medical Education and Licensure to have completed satisfactorily a two years' course in the basic medical sciences similar to that required of medical students, including anatomy, physiology, physiological chemistry, bacteriology, and pathology. They must likewise complete a third year which includes hygiene, preventive medicine, dietetics, symptomatology, diagnosis, analysis, and pathology equivalent in amount to that required of the medical schools of the Commonwealth.

This regulation indicates that drugless therapists receive education in the diagnosis of ailments and diseases of the human body comparable to doctors of medicine. The variation and limitation in the license are restricted to the methods of treatment. Whereas physicians are trained and licensed to treat by drugs and surgery, drugless therapists cannot use drugs or surgery and may only employ the methods of their particular form of therapy.[4]

---

[2] 1 Pa. Reg. (1946) 603; Act of March 21, 1945, P. L. 51, 63 PS §41.1 et seq.

[3] Ibid.

[4] See Cowdery v. Bd. of Medical Education and Licensure, 57 Dauph. 365 (1946).

"Chiropody" is defined by a separate act, which places this form of medical practice under the jurisdiction of the medical board, as follows:

"Chiropody or Podiatry, as used in this act, is defined to be the diagnosis of foot ailments, and the practice of minor surgery upon the feet, limited to those structures of the foot superficial to the fascia of the foot, the padding, dressing and strapping of the feet, the making of models of the feet, and palliative and mechanical treatment of functional disturbances of the feet": Act of March 21, 1945, P. L. 51, as amended by the Act of June 25, 1947, P. L. 977.

The educational preparation required of chiropodists is by no means as extensive as that required of the more general branches of medicine. But the diagnosis of foot ailments is included by definition within the scope of chiropody and unquestionably foot ailments may render professional employes unable to perform their duties.

Under the authority of the Medical Practice Act, the State Board of Medical Education and Licensure licenses physiotherapists. "Physiotherapy" covers a broad field of treatment of the human body, but the regulations of the medical board indicate that the practitioners of these branches of medicine are not required to have training in the diagnosis of the conditions of the human body. Their activities are limited solely to methods of treatment. Because the treatment of bodily conditions can be considered one of the healing arts, it would be possible to place these practitioners in the same class legally with physicians. We do not believe, however, that the legislature intended such a result. The object to be attained by the proviso in section 1206 of the School Code, which is here under consideration, is a method by which school districts may justify sick leave payments to professional em-

ployes. The certificates that such employes are unfit for duty should, therefore, be made by one who, by legislative standards, is competent to evaluate the effect of a particular bodily condition or disease on the ability of such employes to discharge the duties of their occupations. Under our system of licensing, this means a practitioner whose professional qualifications include a knowledge of diagnosis, rather than a practitioner whose license permits him only to treat or correct bodily conditions or diseases.

The Medical Practice Act by its terms does not regulate the practice of osteopathy, dentistry, optometry or pharmacy.[5]

We have no doubt that the practitioners of pharmacy and optometry were never intended to be included in the phrase in question. By judicial determination optometrists are not practitioners in medicine (Martin v. Baldy, 249 Pa. 253 (1915)), and it is apparent from the act regulating pharmacy [6] that no practice of any healing art is involved.

The "practice of osteopathy", however, does involve the diagnosis and treatment of ailments and diseases of the human body.[7] In any respect the scope of osteopathy is as broad as and is coextensive with that of medicine. Since practitioners of osteopathy are licensed by the legislature to practice what is obviously one of the healing arts, we have no doubt in determining that they should be included within the class sought to be defined by the phrase in question, even though the courts may not agree with prior opinions of this de-

---

[5] Act of June 3, 1911, P. L. 639, as amended, 63 PS §411.

[6] Act of May 17, 1917, P. L. 208, as amended by the Act of April 13, 1945, P. L. 231, 63 PS §291 et seq.

[7] Act of March 19, 1909, P. L. 46, as amended, 63 PS §266.

partment that for certain purposes osteopaths are physicians.[8]

A more difficult question is presented by the "practice of dentistry" which, within the meaning of the Dental Law of May 1, 1933, P. L. 216, sec. 2, as amended, 63 PS §121, includes the diagnosis and treatment of any disease, pain or injury, or regulation of any deformity or physical condition of the human teeth, jaws or overlaying tissues. It is apparent from the scope of this practice that to secure a license in Pennsylvania these practitioners must be educated in diagnosis, as well as treatment of diseases and conditions pertaining to that portion of the human body to which the practice is limited. They would, therefore, qualify to be admitted to the class because of their professional qualifications. The fact that the practice is limited to a particular portion of the body is of no significance if chiropodists are also to be included in the class, as we have seen they should be.

The difficulty with dentistry is that the Dental Law, in the section above referred to, contains the following statement:

". . . The term 'Practice of Dentistry' does not include:

"(a) The practice of any of the healing arts by duly licensed practitioners."

This provision was evidently included in the Dental Law for the purpose of removing the licensure of dentists from the jurisdiction of the State Board of Medical Education and Licensure, and in our opinion should be given no significance in determining whether dentistry should be admitted to the class which the phrase in question is intended to include. It should be observed, however, that sick leave certificates signed by dentists,

_____
[8] Osteopaths as School Physicians, 47 D. & C. 500; Formal Opinion No. 526, 1945-1946 Op. Atty. Gen. 18; Osteopath as Medical Examiner, 54 D. & C. 625; see Tanenbaum v. D'Ascenzo et al., 356 Pa. 260 (1947).

as well as those signed by chiropodists, should be considered valid only if the disease or bodily conditions specified therein relate to those portions of the human body to which practice of chiropody and dentistry are limited by statutes and licenses.

We are, therefore, of the opinion, and you are accordingly advised that the phrase "physician or other practitioner", as used in the 1947 amendment of section 1206 of the School Code, is intended to define a class which includes at least the following:

(a) Physicians and surgeons, (b) osteopaths, (c) drugless therapists, (d) dentists, and (e) chiropodists.